## D. W. MURPHY *v.* EXECUTOR OF W. COOK.

S. R. M., by a conveyance executed in Alabama, in consideration of the sum of $600, the receipt of which was acknowledged, bargained, sold and delivered to W. C. certain negroes, "under the further agreement and condition that, after the death of the said W. C., the said negroes should revert to D. W. M. and his heirs; but should the said D. W. M. die before the said W. C., then and in that event the said W. C. shall and may appoint and nominate any other person he may think proper to take charge of and control the raising and employment of the said children above mentioned, and should the said W. C. desire it, at his death, and it should become practicable, their freedom shall be obtained." *Held:*

1st. The instrument under our laws contains a substitution. C. C., 1507.

2d. Even at common law so complicated a limitation of personal chattels could not be maintained. Notwithstanding the limitation, the absolute title to the slaves vested in W. C.

APPEAL from the District Court of Morehouse, *Richardson,* J. *McGuire & Ray,* for plaintiff and appellant. *Robertson & Todd,* for defendant.

MERRICK, C. J.  This controversy arises out of the following instrument, viz:

"Know all men by these presents, that I, *Sarah Murphy,* of the State of Alabama and county of Clark, for and in consideration of the sum of six hundred dollars, the receipt whereof is hereby acknowledged, hath, and by these presents do bargain, sell and deliver to *William Cook,* of the county and State aforesaid, a certain negro woman named *Cotta,* and her two children, *James* and *John,* under the further agreement and condition that, after the death of the said *William Cook,* the said negroes shall revert to *Duncan W. Murphy* and his heirs; but should the said *Duncan W. Murphy* die before the said *William Cook,* then and in that event the said *Cook* shall and may appoint and nominate any other person he may think proper to take charge of and control the raising and employment of the said children above mentioned; and should the said *Cook* desire it at his death, and it should become practicable, their freedom shall be obtained.

"This tenth day of January, 1848.

Signed :                    S. R. MURPHY."

"I, *Duncan W. Murphy,* and I, *Sarah Murphy,* subject to the agreement above, do hereby release all our right, title and interest in the above mentioned negroes. Done and executed at the same time with the above.

Signed:                    D. W. MURPHY,<br>
F. B. CARTER,<br>
S. R. MURPHY."

"The within is a correct and true duplicate of the *bill of sale* in the possession of *William Cook,* January 10th, 1848.

Attest :                    D. W. MURPHY."

The slaves having been delivered to *Cook,* were brought in the early part of the year 1849 to Louisiana.  *Cook* died in possession of the negroes, and the present suit was brought by *Duncan W. Murphy* under said instrument, and also in right of his wife, a daughter of *Sarah R. Murphy,* to recover of the executors of *Wm. Cook* the said slaves.

*Duncan W. Murphy* having died after the institution of the suit, his widow, as guardian to his minor children, prosecutes it on their behalf.

The instrument on which the plaintiff relies seems to contain a substitution, and would, if executed here, be invalid, under Article No. 1507 of the Civil Code.

As the plaintiff seeks to recover, in virtue of the laws of Alabama, it is incumbent on him to show clearly that the instrument is valid by the laws of that State. Not having been referred to any decision of the courts of that State, we are obliged to decide the case upon such common law authorities as are at hand·

At common law, wards of inheritance were not necessary (as counsel suppose) in order to transfer the absolute property in goods and chattels. No particular form of words was required; delivery alone perfected the sale. Real estate, under the feudal system, required wards of inheritance in order to convey the fee, because it was presumed that a grant was made on account of the person or personal abilities of the grantee. This being the inducement, the donee's estate in land extended only to his own person, and subsisted no longer than his own life, unless the donor, by an express provision in the grant, gave it a longer continuance, and extended it also to his heirs. 2 Black. Com., 108. Anciently, by the common law, there could be no future property to take place in expectancy created in personal goods and chattels. And now, where an estate tail in things personal is given to the first or any subsequent possessor, it vests in him the total property, and no remainder over is permitted on such a limitation. 2 Black. Com., 398.

Story says: " In regard to estates in terms of years and personal chattels, the manner of settling them is different; for in them no remainder can at law be limited. But they may be entailed at law by an executory devise or by *deed of trust in equity* as effectually as estates of inheritance, and with the same limitations as to perpetuity. However, the vesting in interest in a term for years, or in chattels in any person equivalent to a · tenancy in tail, confers upon such person the absolute property in such term or chattels, and bars the issue, and all subsequent limitations, as effectually as a fine and recovery would do in cases of pure entails, or as an alienation would do in case of conditional fees and estates *pour autre vie*. If, in case of a term of years or of chattels, the limitations over are too remote, the whole property vests in the first taker. 2 Story's Equity, No. 990, p. 323. See also 2 Keat's Commentaries, 352, and note b.

This last author says: "Chattels may be limited over by way of remainder, after a life interest in them is created, *though not after a gift of the absolute property.*" 2 Kent., 352.

The instrument before us purports to be a sale of the property in question. The original plaintiff called it, in the certificate which he appended to it, " the bill of sale." The operative words used are, bargain, sell and deliver to *William Cook*, etc., a negro woman, etc. The price agreed upon and paid by *Cook*, was six hundred dollars.

We do not think, after this absolute transfer of the property, a remainder over could be limited, even had a trustee been interposed.

If we look at the character of the remainder attempted to be created after the absolute transfer of the property to *William Cook*, we find that after his death it was to revert to *Duncan W. Murphy* and his heirs; but if *Duncan W. Murphy* should die before said *Cook*, in that event said *Cook shall and may* appoint and nominate any other person he may think proper to take charge of and control the raising and employment of said children above mentioned. The contingency here spoken of, is the death of *Duncan W. Murphy* before *Cook*. If the happening of this contingency was not intended to leave *William Cook* the legal owner of the property, it was at least intended to confer on him the power of naming some one who should have such an interest in them as to control the *employment* of said slaves as well as their raising.

We also find the further contingency, that if it should become practicable, and *Cook* should desire it, the slaves were to become free; thus recognizing in *Cook* the further right of an owner to emancipate his slaves.

We do not think that at common law so complicated a limitation of personal chattels could be maintained, nor do we think that a court of equity would interpose to appoint a trustee in a case where the legal title had, for a price, and by bargain and sale, been transferred to another.

We have not cared to inquire into the motives of the parties to this instrument. *Duncan W. Murphy,* by bringing the suit, has treated it as a real conveyance. As the policy of our law is against instruments containing substitution, we think we may safely take the original plaintiff's certificate as to the nature of this conveyance as the true one, and consider the property as having vested absolutely in *William Cook,* the first taker, in virtue of his title as purchaser.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be affirmed, with costs.